IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| PATRICK L. HANNON | ) | |
| and KARA D. HANNON, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 160324R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION[1]** |

Plaintiffs appealed Defendant's Notice of Assessment, dated August 29, 2016, for the

2013 tax year. A telephonic trial was held on January 11, 2017. Lance Brant, CPA, appeared on

behalf of Plaintiffs. Dixie Hannon (Dixie)[2], Patrick Hannon (Patrick), and Mark Bonnett

(Bonnett), attorney-at-law, testified on behalf of Plaintiffs. David Lenhart appeared on behalf of

Defendant. Plaintiffs' Exhibits 1 to 8 were admitted into evidence without objection.

Defendant's Exhibits A to R were admitted into evidence without objection.

## I. STATEMENT OF FACTS

Patrick persuaded his mother, Dixie, to jointly purchase an ambulance company known

as Cascade Medical Transport of Oregon (Cascade), an S corporation, in 2012. Dixie had better

access to credit and she borrowed money under an equity line of credit from Bank of the West,

for the benefit of Cascade. (Ptfs' Ex 7.)[3] On or about September 10, 2012, Cascade executed a

---

[1] This Final Decision incorporates without change the court's Decision, entered June 30, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] It is the court's practice to identify individuals by their last name, however, in this case there are two individuals with the same last name.

[3] Plaintiffs submitted as an exhibit a document showing a renewal of Dixie's line of credit dated April 8, 2013.

document entitled "Revolving Line of Credit Note" up to the principal sum of $200,000 in favor of Dixie. (Ptfs' Ex 3.) The loan rate was set at two percent above the line of credit owed by Dixie to Bank of the West. (*Id*.) The loan to Cascade was executed by "Patrick Hannon, Member" and "Dixie Hannon, Member" and the document identified the "Lender" as "Dixie L. Hannon." (Ptfs' Ex 3 at 2.) Patrick signed a second document, dated September 10, 2012, entitled "Guarantee of Revolving Line of Credit Note" in which he as "Guarantor" personally guaranteed the debt "due to the Lender [Dixie] by the Debtor [Cascade], up to a limit of 49% of $200,000, under the terms of the September 10, 2012 Revolving Line of Credit Note." (Ptfs' Ex 3 at 3.) Dixie and Patrick testified that it was their intent that Patrick would be considered a lender up to his 49 percent of his guarantee. Dixie testified that Patrick has not paid her any money based on the 2012 guarantee. Plaintiffs claimed a pass-through loss of $52,615 from Cascade on their 2013 income tax return. (Def's Ex D at 3.)

Defendant audited Plaintiffs' 2013 income tax return with respect to the pass-through loss. During the audit, Plaintiffs' representative submitted a 2013 profit and loss statement and balance sheet for Cascade. (Def's Ex I.) Under the category of "liabilities" the statement lists "Dixie LOC Loan" next to the figure of $179,160.52. (*Id*. at 3.) On June 15, 2016, the auditor mailed Plaintiffs a notice that their 2013 income taxes had been adjusted to "[d]isallow losses claimed in excess of basis in S Corporation." (Def's Ex J at 3). Plaintiffs' representative requested a conference and wrote in a letter to Defendant as follows:

> "Dixie Hannon, the mother of Patrick Hannon, has funded, outside the company, a loan in her own name with a bank. Patrick Hannon has entered into a subordination agreement drafted by corporate attorney for this outside loan in their personal names and Patrick Hannon now owes Dixie Hannon 50% of the loan taken out. Both parties then contributed their money from the outside loan proceeds to the company as a shareholder note."

(Def's Ex K.)

On June 29, 2016, Defendant's conference officer upheld the audit decision. (Def's Ex L.) Plaintiffs consulted Bonnett. Bonnett testified that he reviewed the documents Plaintiffs presented during the audit and concluded that they did not effectuate the stated intent of Dixie and Patrick to make Patrick a co-lender on the loan to Cascade. Bonnett testified that in 2016 he drafted a document entitled "Partial Assignment of Revolving Line of Credit Note" (Partial Assignment Note) to effectuate his client's stated intent to make Patrick a co-lender for the 2012 loan. Bonnett testified on cross-examination that he did not date the document and "told the clients that here is a document that accomplishes what you said your intent was and you fill it out as you deem appropriate." The document as completed by or on behalf of the client states "THIS PARTIAL ASSIGNMENT is entered into as of this 28 day of September, 2012." (Def's Ex M at 2.) On July 21, 2016, Plaintiffs' CPA mailed a request to reconsider the conference decision and attached a copy of the Partial Assignment Note. (Def's Ex M at 1.) On or about August 23, 2016, Defendant denied Plaintiffs' request stating "I do not accept the attempt to recharacterize the guarantee originally presented during the audit." (Def's Ex N at 1.) On or about September 7, 2016, Bonnett wrote Defendant a letter indicating that he was representing Plaintiffs for the 2013 tax year. (Def's Ex O at 2.) The letter states that Plaintiffs "haven't attempted to recharacterize anything." (*Id).* The letter also states "the partial assignment of note provides for Mr. Hannon's purchase of a 49 percent interest in the loan and associated note." (*Id.* at 3.) Plaintiffs submitted at trial a revised 2013 balance sheet for Cascade, dated December 20, 2016, stating long-term liabilities were "N/P Dixie—51%" and "N/P Patrick—49%." (Ptfs' Ex. 4 at 1.)

/ / /

/ / /

/ / /

## II. ANALYSIS

The issue in this case is whether Plaintiffs had sufficient basis in indebtedness, based on a loan to an S corporation, under Internal Revenue Code (IRC) §1366 from which to deduct a percentage of losses the corporation sustained in the 2013 tax year. In analyzing Oregon income tax cases, the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's "personal income tax law identical in effect" to the IRC for the purpose of determining taxable income of individuals, where possible. ORS 316.007.[4] Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence." ORS 305.427.

The IRC provides that a shareholder of an S corporation is liable for tax on their pro rata share of the corporation's income and conversely may be entitled to deduct their pro rata share of the losses. IRC §1366. The loss deduction is limited by the shareholder's basis in the S corporation. IRC §1366(d)(1). "Any genuine indebtedness of the corporation to the shareholder increases basis under §1366. Thus, where a shareholder loans money to the corporation, the shareholder's basis in the corporation increases and so does the amount of loss he or she can deduct." *Oren v. Comm'r*, 357 F3d 854, 857 (11th Cir 2004). The tax courts have issued a number of decisions defining genuine indebtedness: The transaction must leave the taxpayer "poorer in a material sense" (*Oren*, at 857-58); the "S corporation's indebtedness must run directly to the shareholder; an indebtedness to a pass-through entity that advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements." *Miller v. Comm'r*, TCM 2006-125 (2006) (citations omitted). "When an S corporation shareholder guarantees a loan by a bank to the S corporation, no debt has been created between the S corporation and the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

shareholder." *Montgomery v. Comm'r*, TCM 2013-151 (2013) (citations omitted).

A.      *Pre-Notice of Assessment Facts*

The court will first consider the documents as they were submitted at audit and then review the documents supplied after the Notice of Assessment. In the documents originally submitted to Defendant, the court finds that there is no economic substance to the assertion that Patrick loaned Cascade money. Dixie obtained the money for the loan through a bank loan which she alone was the signatory and obligor. The Revolving Line of Credit Note identified Dixie as "lender" and Cascade as "borrower." As of 2013, Patrick's only written obligation in the transaction was a guarantee to Dixie of up to 49 percent of $200,000. He had no obligation to Bank of the West on the loan on one side, and was not entitled to payment from Cascade on the loan on the other side. Treasury Regulations specifically states that:

> "A shareholder does not obtain basis of indebtedness in the S corporation merely by guaranteeing a loan or acting as a surety, accommodation party, or in any similar capacity relating to a loan. When a shareholder makes a payment on bona fide indebtedness of the S corporation for which the shareholder has acted as guarantor or in a similar capacity, then the shareholder may increase the shareholder's basis of indebtedness to the extent of that payment."

Treas Reg §1.1366-2(a)(ii).

Plaintiffs argue that the source of the funding to Cascade was a "back-to-back" loan and that the "'Actual Economic Outlay' standard no longer applies." (Ptfs' Ex 2 at 2.) However, the court believes that Plaintiffs misread case law and IRS directives. *See*, *Basis of Indebtedness of S Corporations to Their Shareholders*, 79 FR 42675-01 (2014). Courts still look to transactions as a whole for their economic substance. *Id.* Dixie's loan to the corporation, immediately after she obtained a loan from Bank of the West, appears to be a back-to-back loan. Dixie's loan involved a real economic outlay, involving an unrelated third party, and her funds were at risk. Her loan to Cascade confers an increased basis. Patrick never borrowed money from any source.

Patrick's "loan" did not involve a real economic outlay from him, involved only a related party, and the risk to his funds remained theoretical as he was not the primary obligor on the loan. With respect to Patrick, the loan to Cascade was not a back-to-back loan and the economic outlay standards apply.

The court then turns to an examination of the economic outlays involved. The 2013 Cascade profit and loss statement originally submitted to Defendant unambiguously identifies the loan obligation as belonging to Dixie. Patrick was not made any poorer in a material sense in the loan transaction to Cascade. Plaintiffs have offered no evidence that they personally borrowed funds from any source and then advanced those funds to Cascade. Further, Patrick was never forced to make payments under his guarantee; this obligation remained purely theoretical in 2013. Based on a totality of the circumstances the court finds that Patrick's "loan" to Cascade had no economic substance. Therefore, Plaintiffs did not acquire a basis from the 2012 loan to Cascade based on the evidence submitted to Defendant prior to the Notice of Assessment.

B.      *Post-Assessment Document*

The court considers documents submitted to Defendant and the court subsequent the Notice of Assessment separately because there are additional factors to consider. Plaintiff argues that the Partial Assignment Note gives economic substance for Patrick's loan to Cascade. Plaintiff argues that the Partial Assignment Note, created by Bonnett in 2016, which states that it is entered into as of September 28, 2012, is not a backdated document, but rather a document which memorializes the intent of the parties as of that date. Backdate means "to put a date earlier than the actual date on (something, as an instrument.)" Black's Law Dictionary 148 (8th ed 2004). The Dictionary notes that backdating does not alter the negotiability of the instrument

under the Uniform Commercial Code. The Partial Assignment Note contains a date earlier than its creation. Thus, the court finds the Partial Assignment Note is a backdated document. As between Patrick and Dixie, the agreement, which they both agree represented their intent at the time the loan to Cascade, appears enforceable. But it is a different result as it applies to the tax consequences. The contemporaneously signed agreements—loans, guarantees, and accounting documents—belie the assertion that the backdated document memorializes the actual agreement between the parties. "The determinative fact is the intention as it existed at the time of the transaction. That intention cannot be vitiated by changed circumstances or subsequent actions bred in the cold light of tax consequences." *Saigh v. Comm'r*, 36 TC 395, 420 (1961). Additionally, the fact that Plaintiffs' CPA and attorney both attempted to persuade Defendant to change the results of its audit and conference decision based in part on the Partial Assignment Note, without disclosing that it was backdated, and did not candidly present that information to the court during Bonnett's direct testimony, renders the document of little weight on the issues before the court.[5] The Partial Assignment Note, which contradicts documents which were created contemporaneous with the loan at issue, does not confer economic substance to the assertion that Patrick loaned Cascade money in 2012. Plaintiffs may not use the loan to establish their basis pursuant to IRC §1366.

/ / /

/ / /

/ / /

/ / /

---

[5] It is beyond the jurisdiction of this court to decide whether CPA Brant or Attorney Bonnett violated their respective rules of Professional Conduct for failing to disclosure to Defendant that the Partial Assignment Note was backdated. The court did consider whether its duty to report ethics violations under Rule 3.11(B) of the Code of Judicial Conduct was triggered by the parties conduct. The court ultimately found that it could not conclude that a clear ethical violation had occurred.

### III. CONCLUSION

After careful consideration of the evidence, the court concludes that Plaintiffs failed to carry their burden of proof that they had sufficient basis in indebtedness, based on a loan to Cascade, from which to deduct a percentage of losses the corporation sustained in the 2013 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of July 2017.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on July 18, 2017.*